Argued and submitted November 16, 1984, affirmed January 23, reconsideration
denied April 5, petition for review denied May 7, 1985 (299 Or 154)

In the Matter of the Compensation
of Donald R. Bailey, Claimant.

CECO CORPORATION et al,
*Petitioners,*

*v.*

BAILEY et al,
*Respondents.*

(82-06336, 83-00773, 83-00774
and 83-00969; CA A31149)

693 P2d 1325

Jerald P. Keene, Portland, argued the cause for petitioners. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Jan Thomas Baisch, Portland, waived appearance for respondent Donald Bailey.

Patrick D. Gilroy, Portland, argued the cause for respondent Cotter & Company. With him on the brief were Schuyler T. Wallace, Jr., and Mitchell, Lang & Smith, Portland.

Bruce L. Byerly, Portland, argued the cause for respondents Mitchell Bros. Truck Lines and EBI Companies. With him on the brief was Moscato & Byerly, Portland.

LaVonne Reimer, Portland, argued the cause for respondents WNI, Inc., and Farmers Insurance Group. With her on the brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

The issue in this workers' compensation case is which of four employers (Ceco Corporation, Cotter & Company, Mitchell Bros. Truck Lines, or WNI, Inc.) is responsible for claimant's herniated lumbar disc and resulting surgery. The referee decided that the work conditions at claimant's last employer, WNI, Inc., constituted a new injury which materially contributed to claimant's condition. The Board reversed, finding that claimant's condition resulted from an aggravation of a low back injury in July, 1978, while he worked for Ceco Corporation (Ceco), and that Ceco and its insurer are responsible.[1] On *de novo* review we affirm.

Claimant injured his back in July, 1978, while employed by Ceco as a carpenter. Dr. Baldwin diagnosed acute low back strain. In September, 1978, claimant was treated by Dr. Gritzka, an orthopedist, whose initial diagnosis was "subacute lumbosacral strain with left radiculopathy. Possible herniated disc." Dr. Gritzka later explained his diagnosis:

> "I felt that the patient possibly had a herniated lumbar disc. I felt such a herniation might be in its earlier incipient stages, but did not feel that the patient had developed a frankly herniated disc."

In February, 1979, claimant was examined by Dr. Langston, who diagnosed lumbar strain and degenerative disc disease at L4-5. In November, 1980, x-rays showed an estimated 50 percent narrowing at L4-5 with mild degenerative spurring and scoliosis. In November, 1980, Dr. Pasquesi examined claimant and diagnosed "chronic lumbar instability with probable degenerative disc disease with some sciatic radiation in the left leg." On November 28, 1980, a determination order awarded 20 percent permanent partial disability, which was increased to 27 percent by stipulation on May 15, 1981.

Claimant was retrained as a truck driver and worked for Cotter & Company from December, 1980, until September, 1981. His job included driving and loading and unloading freight. He reported chronic back pain but lost no time from work. He then worked for Mitchell Bros. from October, 1981,

---

[1] The referee and the Board determined that the evidence was insufficient to assign responsibility to Cotter & Company and Mitchell Bros. Truck Lines and we agree.

to February, 1982. That job required him to lift, tie down and remove heavy tarps covering the freight. He continued to experience low back pain, but again he lost no time from work. On April 28, 1982, claimant went to work for WNI. Claimant's job did not include loading and unloading, except for one instance in which he helped his partner unload items weighing 5 to 35 pounds. There was no change in his back symptoms. On May 17, 1982, his truck was being loaded with doors. He did no lifting, but he was required to do "some bending and stooping" in order to inventory the load. The loading dock where he stood vibrated when forklifts passed over it. About mid-morning his leg began to tingle and his back pain increased. Claimant went to a hospital emergency room, and Dr. Joseph diagnosed back strain. On June 2, 1982, a CAT scan revealed either an "excessive bulging of the annulus or small central herniation at the L4-5 disc level." Claimant was then briefly hospitalized. On discharge, Dr. Gritzka noted that claimant had a "possibly minimally bulging disc in the lumbosacral area." Surgery was performed on October 27, 1982, and revealed a minor herniation. The amount of disc material removed was "not very impressive."

On appeal, Ceco argues that the Board misapplied *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 675 P2d 1044 (1984). Ceco contends that *Starbuck* expressly mandates that *prima facie* liability for disability following successive work-related injuries be placed on "the last employer whose conditions of employment *might* have caused the disability." (Emphasis supplied.) Ceco argues that liability remains with the last employer, unless preponderating evidence shows that the disability was caused solely by previous work injuries and that subsequent employment conditions did not contribute, even slightly, to the disability.

In cases of successive injury "where a compensable injury at one employment contributes to a disability occurring during a later employment involving work conditions capable of causing disability, but which did not contribute to the disability, the first employer is liable." *Boise Cascade Corp. v. Starbuck, supra,* 296 Or at 244. Whether or not the work conditions at the later employment contributed to disability is a question of fact. *Boise Cascade Corp. v. Starbuck, supra,* 296 Or at 244-45. The "last injurious exposure" rule operates to place liability on the last employer if "the trier of fact is

convinced that the disability was caused by successive work-related injuries but is unconvinced that any one employment is the more likely cause of the disability." *Boise Cascade Corp. v. Starbuck, supra,* 296 Or 245. If the trier of fact is convinced that the disability was caused by the earlier injury, then the liability for the injury remains with the first employer and the rule has no effect. *Boise Cascade Corp. v. Starbuck, supra.*

The referee found WNI responsible, because claimant's back condition significantly worsened after May 17, when claimant was working for WNI. The Board disagreed and found Ceco responsible for an aggravation of the 1978 injury. The Board concluded:

> "[C]laimant sustained a low back injury in 1978 which was diagnosed to be a developing disc rupture, constant unremitting pain from the time of claim closure in late 1980 until 1982, and no good history of any newer incident. There is no objective evidence that claimant's employment with Cotter, Mitchell Bros. or WNI actually contributed to claimant's condition."

We agree with the Board. Considering all the medical evidence and claimant's testimony that he had unremitting and chronic back pain following the 1978 injury, we are convinced that the most likely cause of claimant's disability is the 1978 interstitial tear in the annulus fibrosis, which gradually degenerated into a minor herniation.

Affirmed.